**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03244-CMA-NYW

IOU CENTRAL INC., d/b/a IOU FINANCIAL INC.,

     Plaintiff,

v.

NANCY LYNN BLISS, and
BEVERLY ANN AUSTIN as Trustee for the B Austin 2015 Revocation Trust, a/k/a Bev
Nour Eldin,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

     This action is before the court on Defendant Nancy L. Bliss's ("Defendant Bliss" or "Defendant") Motion to Dismiss Amended Complaint ("Motion to Dismiss" or "Motion") [Doc. 43, filed August 25, 2021]. The undersigned considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated January 14, 2021 [Doc. 5], and Memorandum dated August 30, 2021 [Doc. 46].[1] This court concludes that oral

---

[1] In the Motion, Defendant notes that "[o]n August 11, 2021, Plaintiff, through counsel, was informed that Defendant Bliss would waive service" of the Amended Complaint, but "[a]s of the date of this Motion, Defendant Bliss has not received a waiver of service to execute from Plaintiff." [Doc. 43 at 2]. Defendant Bliss does not raise any specific dismissal arguments with respect to improper service under Rule 12(b)(5), but does argue that "[a] response date to the Amended Complaint has not been triggered because Defendant Bliss was not properly served with the [sic] either the Complaint or Amended Complaint." *See* [*id.* at 2]. By omitting dismissal arguments based on lack of proper service, Defendant Bliss has waived it. *See* Fed. R. Civ. P. 12(h)(1)(A). In addition, during the Scheduling Conference held on January 6, 2022, the issue of service was once again raised and this court confirmed that consistent with her Status Report dated August 11, 2020, Defendant Bliss was no longer contesting proper service. [Doc. 40]. Rule 55(a) of

argument will not materially assist in the resolution of these matters.  Accordingly, having carefully reviewed the Motion to Dismiss, the docket, and applicable law, this court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL BACKGROUND

The following facts are drawn from the operative Amended Complaint [Doc. 25] and taken as true for the purposes of the instant Motion.  Plaintiff IOU Central, Inc. d/b/a IOU Financial, Inc. ("Plaintiff" or "IOU") alleges that it issued loans, to which property owned by Defendant Bliss is attached as collateral.  *See* [Doc. 25].  Specifically, Defendant Bliss and her spouse, Kent Bliss ("Mr. Bliss"), who is not a party to this action, resided at a property in Texas located at 4608 Ruiz Street, Austin Texas, 787233, Parcel ID. 5660-007-008, and "described as Lot 34 Block 18 Muller Subdivision Section VI, in Travis County, Texas" (the "Texas Property").[2]  [*Id.* at ¶ 8].  Defendant and Mr. Bliss owned the Texas Property beginning September 30, 2014, pursuant to a warranty deed and two deeds of trust executed that day.  [*Id.* 9].  Additionally, Plaintiff alleges that

___

the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default. The Clerk of the Court declined to enter default against Defendant Bliss based on the filing of the Motion to Dismiss.  [Doc. 45].  Therefore, it appears proper to proceed with the substantive consideration of the Motion to Dismiss.

[2] Plaintiff alleges that Mr. Bliss has filed a Chapter 7 Bankruptcy that was discharged on July 8, 2020.  [Doc. 25 at ¶ 3].  Defendant Bliss indicates that Mr. Bliss is now her ex-spouse.  [Doc. 43 at 1].

Defendant Bliss "derives her sole income" from Intercom, Inc. ("Intercom"), a Texas company where Mr. Bliss serves as President.  [*Id*. at ¶ 12].

## I.    The First Loan

On August 25, 2017, Mr. Bliss submitted a loan application to IOU for a commercial loan for him and Intercom ("First Loan"), and IOU alleges the loan was "actually also for Defendant Bliss who knew of, benefitted, consented and ratified the Loan."  [*Id*. at ¶ 13]. Four days later, Intercom executed and delivered a promissory note ("First Note") to IOU for a gross loan amount of $275,000.00, which also included a security agreement ("First Security Agreement") "by which Debtors and [Intercom] encumbered their property and assets as collateral for the Note."  [*Id*. at ¶¶ 14–18]; *see also* [*id*. at ¶ 3 (defining "Debtor" as "Kent Bliss")].  Mr. Bliss ultimately executed a Guaranty of the First Note and Security Agreement to IOU's Georgia office website, thus "consenting to Georgia law."  [*Id*. at ¶ 19].

Plaintiff alleges that Defendant Bliss, Mr. Bliss, and Intercom intended to encumber "the property and assets" of Intercom and Mr. Bliss "as collateral under the [First] Note, Guarantees and Security Agreement," [*id*. at ¶ 20], and that such property became so encumbered, "including the Texas Property," [*id*. at ¶ 21].  IOU claims it was "induced to make the Loan to Defendants providing the Funds based on their representations of (a) their ownership of their property and assets, secured as collateral under the Security Agreement and (b) their compliance with the Instruments (c) upon which IOU materially relied in providing them with the Funds."  [*Id*. at ¶ 26].

In December 2017, Defendant Bliss and Mr. Bliss sought to separate their marital property through the execution of a Separation Agreement.  [*Id*. at ¶ 28].

## II.    The Second Loan

On September 26, 2018, Mr. Bliss submitted another loan application to IOU, seeking a second commercial loan for Mr. Bliss and Intercom, and IOU alleges the loan was "actually also for Defendant Bliss who knew of, benefitted, consented and ratified the Loan" ("Second Loan").  [*Id*. at ¶ 29].   However, Defendant Bliss and Mr. Bliss "did not disclose their separation agreement to IOU, which relied upon their marriage and property, assets and proceeds" in approving the Second Loan for $216,000.00.  [*Id*. at ¶¶ 30–31].  On October 2, 2018, Mr. Bliss "executed/approved" a promissory note ("Second Note") for Intercom to IOU, along with a "loan guaranty fee, confirming all information, [and] consenting to Georgia law" for the Second Loan.  [*Id*. at ¶ 31].  The Second Note contains similar terms as the First Note, "including joint liability for its debt."  [*Id*. at ¶ 32]. The Security Agreement in the Second Note ("Second Security Agreement") also encumbered all property and assets of Intercom and Mr. Bliss.  [*Id*. at ¶ 33].  Defendant Bliss is Mr. Bliss's "successor or assignee" under the Second Note.  [*Id*. at ¶ 34].  The Second Loan defaulted soon after it closed.  *See* [*id*. at ¶¶ 31, 37].

IOU alleges that Defendant Bliss and Mr. Bliss failed to disclose or misrepresented to IOU various issues related to the loans, including the following:

(1) Defendant Bliss and Mr. Bliss "were jointly obtaining and benefitting from the Loan, but [did] not intend to or could not perform the Loan";

(2) Mr. Bliss and Intercom intended to declare bankruptcy for the purpose of evading a "prior suit" filed by IOU in October 2019 related to the Second Loan,[3] "disposed of their property and assets in both bankruptcies," and that such bankruptcy was ultimately dismissed;

(3) On November 2, 2018, Defendant Bliss and Mr. Bliss "fraudulently and covertly sold and conveyed the Texas Property" to another Texas company in an effort to "hinder, defraud or delay enforcement of IOU's Second Loan" as to the Texas Property; and

(5) The sale of the Texas Property and purchase of the Colorado Property occurred before, and are not subject to, Mr. Bliss's bankruptcy, as reflected in the bankruptcy schedules and the December 2017 Separation Agreement.

[*Id*. at ¶ 37]. IOU also alleges that "traceable proceeds [from] the sale of the Texas Property are subject to the Second Loan, but were instead used by [Defendant] Bliss" to purchase a home located in El Paso, Colorado ("Colorado Property") on or about November 19, 2018. [*Id*. at ¶ 37(d)]. IOU alleges Defendant Bliss purchased the Colorado Property "to hinder, delay or defraud enforcement of the Loans on this concealed property." [*Id*.]. In providing both Loans, IOU "materially relied upon the representations of [Mr. Bliss] and [Intercom] they were solvent and able to satisfy the

---

[3] IOU alleges that, on October 11, 2019, it filed another lawsuit in the Northern District of Georgia against Intercom and Mr. Bliss, Case No. 1:19-cv-04595-TWT, "to enforce similar claims under the Loans" after default had been entered upon them, and that Defendant Bliss "remained named and in default until Plaintiff dismissed that case" on April 19, 2021. [Doc. 25 at ¶ 37(f)].

debt, particularly as [Mr. Bliss] represented that he jointly owned the Texas Property" with Defendant Bliss.  [*Id*. at ¶ 38].

## PROCEDURAL BACKGROUND

On October 30, 2020, IOU filed this action against Defendant Bliss to add her to the Loan documents, obtain judgment against her for the debt, and attach and sell her property and assets, including the Colorado Property.  [Doc. 1; Doc. 25 at ¶ 40]; *see generally* [Doc. 1].  On November 3, 2020, IOU recorded a *lis pendens* on the Colorado Property, "detailing this case and the claims in the case." [Doc. 25 at ¶ 41].  On November 12, 2020, Defendant Bliss purportedly sold the Colorado Property to Defendant Beverly Ann Austin ("Defendant Austin"), who in turn filed a "Statement of the Trust" with El Paso County.  [*Id*. at ¶¶ 42, 44].  Plaintiff alleges that Defendant Austin "acquired her alleged interest in the Colorado Property" with "notice and knowledge of IOU's superior interest" in that property per the *lis pendens* and the Georgia case.  [*Id*. at ¶ 45; *see also* [*id*. at ¶ 37(f)].  Additionally, IOU alleges that Defendant Austin's "Statement of Trust and the Deed of the Colorado Property" did not comply with a Colorado statute regarding conveyances of real property by omitting several details, including the names of the beneficiaries and the grantee's authority.  [*Id*. at ¶ 46].  IOU also alleges that Defendant Bliss "breached and defaulted upon the [loan] Instruments, which she never cured, failing to make payments or otherwise comply with them and she is liable to IOU under the Instruments and for her other misconduct with Defendant Austin," [*id*. at ¶ 47], including that Defendant Bliss's "property and assets are secured as collateral," [*id*. at ¶ 50].

IOU asserts seven claims against Defendants: (1) Declaratory and Equitable Relief as to Defendant Bliss ("Claim One"); (2) Breach of Instruments and Related Relief as to Defendant Bliss ("Claim Two"); (3) Quantum Meruit/Unjust Enrichment and Related Relief as to Defendant Bliss ("Claim Three"); (4) Conveyance to Defraud and Related Relief as to All Defendants ("Claim Four"); (5) Equitable Lien/Mortgage and Related Relief as to All Defendants ("Claim Five"); (6) Constructive Trust and Related Relief as to All Defendants ("Claim Six"); and (7) Judicial Foreclosure and Related Relief as to All Defendants ("Claim Seven")[4].  [Doc. 25 at 10–16].

On November 18, 2020, the undersigned entered an Order setting the Scheduling Conference for January 20, 2021, and directing the Parties to file the Consent/Non-Consent Form regarding the consent of the parties to the jurisdiction of a magistrate judge by January 6, 2021.  [Doc. 4].  The Parties ultimately did not consent, and this case was randomly reassigned to Judge Christine M. Arguello, [Doc. 7], and referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), [Doc. 9, filed January 14, 2021].  On January 14, 2021, the undersigned *sua sponte* reset the Scheduling Conference to March 3, 2021 on the basis that it did not appear that service on Defendant Bliss had been effectuated.  [Doc. 10].  On March 1, Plaintiff moved for an extension of time "to effect transfer and consolidation of the Georgia Case with this case" and "serve Defendants as needed," as well as a continuance of the Scheduling Conference.  [Doc. 11].  The court granted in part and denied in part Plaintiff's motion,

---

[4] The seventh claim for relief is marked as "Count VIII" in the Amended Complaint.  *See* [Doc. 25 at 15].

and directed Plaintiff to serve Defendant Bliss by April 5, 2021.  [Doc. 13].  The court ultimately held a Status Conference (converted from a Scheduling Conference) with the Parties on June 10, 2021, during which Plaintiff indicated that it anticipated amending the complaint.  *See* [Doc. 18; Doc. 20].  The court reset the Scheduling Conference from August 9, 2021, and directed the Parties to file a proposed Scheduling Order by August 2.  *See* [Doc. 21].

On June 12, Plaintiff filed a motion to amend the complaint, [Doc. 22], which the court granted two days later, [Doc. 24].  The Amended Complaint [Doc. 25, filed June 15, 2021] added Defendant Austin as a party, and remains the operative pleading in this case. On June 30, Defendant Bliss sought a 30-day extension of time to respond to the Amended Complaint wherein she stated that she was "never properly served with the initial Complaint" and had not been served with the operative Amended Complaint.  [Doc. 32 at 1–2].  On July 2, the undersigned denied without prejudice Defendant Bliss's request for extension insofar as she sought "relief from a responsive pleading deadline that ha[d] not yet been triggered (by service of the Amended Complaint)."  [Doc. 34].  On July 16, 2021, Defendant Austin filed her answer to the Amended Complaint, as well as a counterclaim for slander of title against IOU and a crossclaim for breach of warranty of title against Defendant Bliss.  [Doc. 35].

On August 2, Defendant Bliss filed a motion requesting to hold in abeyance her deadline to respond to Defendant Austin's counterclaims and crossclaims "pending adjudication of Defendant's response to the Amended Complaint" filed by Plaintiff.  [Doc. 36 at 1].  Therein, Defendant Bliss again represented that she was "never properly served

with the initial Complaint" and had not yet been served with the operative Amended Complaint.   [*Id*. at 1–2].   On August 4, the undersigned denied without prejudice Defendant Bliss's request for extension insofar as she sought "an extension for an indeterminate amount of time and premised on a separate response deadline that has not yet been triggered (by service of the Amended Complaint)." [Doc. 38].  Additionally, considering the ongoing issues with effecting service on Defendant Bliss, and the Parties' failure to file a proposed Scheduling Order by the August 2 deadline, the court converted the August 9 Scheduling Conference to a Status Conference.  [*Id*.].

On August 9, the undersigned held the status conference, and ordered that, on or before August 11, 2021, the Parties "shall meet and confer and file a Joint Status Report notifying the court if counsel is authorized to accept service or what manner by which the Parties intend to resolve the service of Defendant Bliss, any proposed deadlines for responsive pleadings and a time frame for the Scheduling Conference."  [Doc. 39 at 1]. The court also ordered that "[t]he Scheduling Conference should be held no later than six weeks from" the day the Order was entered.  [*Id*. at 2].  The Parties did not, however, file a "Joint" status report.  Instead, on August 11, 2021, Defendant Bliss filed "Defendant Nancy Bliss' Status Report to the Court" [Doc. 40], wherein she represented that "[d]espite never being served with the Complaint or Amended Complaint, Defendant agrees to waive service in order to proceed with litigation and reach the merits," [Doc. 40 at 2]; and requested a deadline of September 10, 2021 to respond to the Amended Complaint, "and the deadline to respond to the Trust's counterclaims and crossclaims to fourteen (14) days thereafter,"  [*id*.].  The next day, IOU filed a separate "Status Report of Plaintiff,"

wherein it opposed Defendant Bliss's requested relief.  *See* [Doc. 41].  IOU asserted that Defendant Bliss's counsel had a copy of the Amended Complaint in her possession since June 30, 2021, [*id*. at ¶ 9], that Defendant Bliss was properly served by mail in April 2021, [*id*.], and that Defendant Bliss appeared for the Status Conference on June 10, 2021, and therefore had notice of the action, [*id*. at ¶ 3].  To date, Defendant Bliss has not responded to the Trust's cross-claims.[5]

Plaintiff did not respond to the Motion to Dismiss, and the deadline to do so has passed.  *See*  D.C.COLO.LCivR 7.1(d).  The Motion to Dismiss is thus ripe for Recommendation.

## LEGAL STANDARDS

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient

---

[5] During the January 6, 2022 Scheduling Conference, Defendant Bliss represented that she and Defendant Austin had reached an agreement that a response to the cross-claims could be held in abeyance until this instant Motion was determined, due to their contingent nature.  [Doc. 52].  This court reminded the Parties that any such agreements were required to be in writing and approved by the court before they were effective; otherwise, the Parties were required to follow the deadlines set forth in the Federal Rules of Civil Procedure.

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (ellipses omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679 (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

Finally, even in the absence of a response by Plaintiff, the court is disinclined to treat the pending Motion to Dismiss as confessed by Plaintiff at this juncture. *Cf. Young v. Brock*, No. 10-cv-01513-WJM-CBS, 2011 WL 7163067, at *3 (D. Colo. Aug. 15, 2011), *report and recommendation adopted*, 2012 WL 385494 (D. Colo. Feb. 7, 2012) (*citing Michel v. Immigration and Naturalization Service*, 119 F. Supp. 2d 485, 486 (M.D. Pa. 2000) (the district court may not grant a motion to dismiss under Rule 12(b)(6) solely because the motion was unopposed; the motion to dismiss must be reviewed on its merits). *But see Peters v. Bank of Am.*, No. 10-cv-01382-WJM-MJW, 2011 WL 1045297, at *1 (D. Colo. Mar. 21, 2011) (granting motion to dismiss without prejudice where the plaintiff, proceeding *pro se*, "confessed the motion by his failure to respond at all to the same").

## ANALYSIS

Defendant Bliss seeks dismissal of the Amended Complaint in its entirety on three general bases.  First, she argues that the "Amended Complaint lacks facial plausibility and attempts to impute wrongful acts of third parties not part of this suit upon Defendant Bliss."  [Doc. 43 at 1].  Specifically, Defendant argues that Plaintiff's allegations of "wrongful acts" are directed toward Defendant's ex-husband, Mr. Bliss, and Intercom, and Plaintiff attempts to impute liability on Defendant Bliss "based on her status as a former spouse" of Mr. Bliss.  [*Id*. at 5].  Second, Defendant Bliss argues that the Amended Complaint "fails to assert sufficient facts—if taken as true—that would give rise to Defendant Bliss being liable."  [*Id*. at 1].  Third, Defendant Bliss argues that Plaintiff's fraudulent transfer claim should be dismissed because the allegations in support of that

claim fail to meet the particularity standard under Federal Rule of Civil Procedure 9(b). [*Id.* at 8–9].

## I.    Choice of Law

The court must first consider which state's law applies in this dispute.  Plaintiff indicates that the parties to the First and Second Note "consent[ed] to Georgia law."  *See* [Doc. 43 at ¶¶ 14, 19, 31].   However, Plaintiff does not attach copies of the First and Second Note to the Amended Complaint, and similarly does not cite to a specific choice-of-law clause in those documents which apply to its claims. In addition, there are no allegations that Defendant Bliss is a party of either the First or Second Note, and there is no explanation as to how she would be thus bound to any choice-of-law provision contained therein.  *See* [Doc. 45].  Thus, Plaintiff's general references to "Georgia law" in the Amended Complaint do not provide any indication that a valid Georgia choice-of-law clause exists, let alone to which of Plaintiff's claims such a clause might apply. Additionally, IOU cites only to federal and Colorado law in support of its fraudulent conveyance, equitable lien, constructive trust, and judicial foreclosure claims, *see* [*id.* at ¶¶ 76, 82, 88, 92], while Defendant Bliss does not cite to any state-specific laws in the Motion to Dismiss, *see* [Doc. 43].

The court finds that these representations and/or omissions indicate that the Parties do not intend for Georgia law to apply.  *See Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1212 (10th Cir. 2001) (holding that parties may waive choice-of-law arguments by failing to adequately brief them).  Moreover, while the court generally applies the law of the state chosen by the contracting parties to govern their rights and duties, if the chosen

state has no relationship to the parties or the transaction, and there is no reasonable basis for the parties' choice, the court applies Colorado's choice-of-law rules. *Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1202–03 (D. Colo. 2012); *see also* Restatement (Second) of Conflict of Laws § 187(2); *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994). Here, even assuming a valid Georgia choice-of-law clause exists, the court finds Georgia to have minimal relationship to the Parties and the Colorado Property. Georgia appears to have been chosen because IOU's principal place of business is in Georgia. *See* [Doc. 1 at ¶ 1]. Because Plaintiff cites only to Colorado law and appears to intend for Colorado law to govern the dispute between the Parties, the court will apply Colorado law in evaluating each of plaintiff's claims. *See Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, No. 20-cv-01413-PAB-GPG, 2021 WL 877716, at *3 (D. Colo. Mar. 9, 2021) (applying Colorado law in evaluating the defendants' motion to dismiss where the parties' briefs "cite[d] only to Colorado law" and the chosen forum had "minimal relationship to the parties and the transaction").

Next, the court will address Defendant Bliss's arguments by examining each of Plaintiff's claims individually. The court will first address Plaintiff's contract-based claims—breach of instruments (Claim Two) and quantum meruit/unjust enrichment (Claim Three)—and then address Plaintiff's fraudulent conveyance claim (Claim Four), followed by Plaintiff's remaining claims.

## II.  Plaintiff's Claims

### A.  Standing – Traceability

Defendant Bliss first argues that the Amended Complaint should be dismissed

because "it fails to provide sufficient factual allegations that, if taken as true, would give rise to Defendant Bliss' liability." [Doc. 43 at 2]. To that end, Defendant Bliss argues that:

> The Amended Complaint alleges Defendant Bliss' ex-husband, Kent Bliss, committed the wrongful acts, and imputes liability upon Defendant Bliss based on a former spousal relationship. Any specific allegations against Defendant Bliss are conclusory…[and] when taken in the light most favorable to Plaintiff, may give rise to Ken Bliss' liability, but not Defendant Bliss.

[*Id.* at 3]. Although not characterized as such, Defendant Bliss appears to raise a standing argument, i.e., any injury suffered by IOU is not fairly traceable to Defendant Bliss even if it is fairly traceable to her ex-husband, Mr. Bliss.

The Constitution confers authority to federal courts only to adjudicate genuine cases and controversies. U.S. Const.; Art. III, § 2. A plaintiff must have standing to invoke the federal court's jurisdiction, and "[a] plaintiff has standing only if he can allege personal injury <u>fairly traceable to the defendant's allegedly unlawful conduct</u> and likely to be redressed by the requested relief." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (emphasis added) (internal quotation and citation omitted). Because standing implicates the court's subject matter jurisdiction, a federal court must consider it *sua sponte* to ensure there is an Article III case or controversy. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

To establish Article III standing, a plaintiff must show an injury that is "[1] concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Id.* For the purposes of ruling on a motion to dismiss for lack of standing, this court must accept as true all material allegations in the

Complaint, and must construe those well-pleaded facts in favor of IOU.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Here, Defendant Bliss and the court are focused on the second element, i.e., traceability.  Put another way, "the issue in the causation inquiry is whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court."  *League of United Latin Am. Citizens, N.M. (LULAC) v. Ferrera*, 792 F. Supp. 2d 1222, 1232 (D.N.M. 2011) (internal quotations and citation omitted).

The Amended Complaint in this matter defines Mr. Bliss as the Debtor and Defendant Bliss as his spouse.  [Doc, 25 at ¶ 8].  On August 25, 2017, Mr. Bliss submitted a loan application to IOU for a commercial loan, and on August 29, 2017, Mr. Bliss's business, Intercom, executed and delivered a Promissory Note to IOU for the First Loan in the amount of $275,0000 in exchange for such funds.  [Doc. 25 at ¶¶ 13–14].  This First Loan was secured by the Texas Property owned by Defendant Bliss and Mr. Bliss.  [*Id.* at ¶¶ 8–9, 21].  The First Loan satisfied a loan by Mr. Bliss and Intercom to Wells Fargo in the amount of $275,000.  [*Id.* at ¶ 27].  Defendant Bliss and Mr. Bliss sought to separate their marital property in a Separation Agreement in December 2017.  [*Id.* at ¶ 28].  On September 26, 2018, Mr. Bliss sought a second commercial loan from IOU, without disclosing the Separation Agreement.  [*Id.* at ¶¶ 29–30].  IOU then provided Mr. Bliss with the Second Loan for a gross/principal sum of $216,000.  [*Id.* at ¶ 31].  As to the Guaranty of the Second Note, IOU alleges Defendant Bliss is also Mr. Bliss's successor or assignee.  [*Id.* at ¶ 34].

As discussed more fully below, there are no factual allegations that Defendant Bliss is a signatory to either the loans or the guaranties and security agreements.  *See generally* [Doc. 25].  But the Amended Complaint avers that Defendant Bliss "derives her sole income" from Intercom, "in which they have shares and/or other interests."  [*Id.* at ¶ 12 (emphasis added)].  It further alleges that Defendant Bliss and Mr. Bliss failed to inform or misrepresented to IOU that Defendant Bliss and Mr. Bliss were jointly obtaining and benefitting from the Loan, but did not intend to or could not perform the Loan, [*id.* at ¶ 37(a)], and that Defendant Bliss "consented, benefitted, and ratified" the various agreements by the receipt and use of the loan funds, *see, e.g.*, [*id.* at ¶¶ 18–19].  Plaintiff contends that on November 2, 2018, Defendant Bliss and Mr. Bliss fraudulently and covertly sold and conveyed the Texas Property that secured the Loan, and the proceeds of the sale of the Texas Property were used by Defendant Bliss to purchase the Colorado Property.  [*Id.* at ¶ 37(c)–(d)].  The Colorado Property was separate property of Defendant Bliss.  [*Id.* at ¶ 37(e)].  On November 12, 2020, Defendant Bliss purportedly sold the Colorado Property to Defendant Austin.  [*Id.* at ¶ 44].

At this point of the litigation, dismissal is appropriate only when "it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief."  *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1083 (D. Colo. 2001) (quotation and citations omitted).  To satisfy the second element of standing, a defendant's alleged misconduct need not be the proximate cause of a plaintiff's harm; rather, a plaintiff must allege sufficient facts to show a substantial likelihood that the defendant's conduct caused plaintiff's injury-in-fact.  *See Hernandez*, 499 F. Supp. 3d at 1050.  "[I]t is well-established

that a plaintiff must demonstrate standing for each claim he seeks to press." *Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1048 (D.N.M. 2020) (quotation and citation omitted).

Taking Plaintiff's allegations as true, this court concludes that dismissal for lack of standing as presented by Defendant Bliss, i.e., as a general matter pursuant to Rule 12(b)(6), is not appropriate.  Thus, I respectfully decline to recommend dismissal based on Defendant Bliss's first argument, i.e., the "Amended Complaint lacks facial plausibility and attempts to impute wrongful acts of third parties not part of this suit upon Defendant Bliss," [Doc. 43 at 1].

### B.    Breach of Instruments and Related Relief as to Defendant Bliss (Claim Two)

To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *PayoutOne*, 602 F. Supp. 2d at 1224 (citing *W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992)); *see also Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, 988 (Colo. App. 1997) (stating that an enforceable contract requires mutual assent to an exchange between competent parties regarding certain subject matter, for which there is legal consideration).

The interpretation of a contract is a question of law.  *Fed. Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013).   A reviewing court's "primary aim in contract interpretation is to ascertain and implement the intent of the parties."  *Id.*  To determine the intent of the parties, "the court should give effect to the plain and generally accepted

18

meaning of the contractual language." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009).  "The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation."  *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992); *Tegu v. Vestal Design Atelier LLC*, 407 F. Supp. 3d 1171, 1177 (D. Colo. 2019).

Here, while the Parties have not included the "instruments" at issue for the court's review, Plaintiff quotes certain sections of the relevant documents in the Amended Complaint.  *See generally* [Doc. 25].  Thus, rather than turning to the instruments at issue, the relevant question here remains whether, based on the four corners of the Amended Complaint, Plaintiff has pled enough to sufficiently state a breach of contract claim against Defendant Bliss.

Defendant Bliss contends that Plaintiff has not, arguing that "the Amended Complaint shows Kent Bliss and Intercom, not Defendant Bliss, are the alleged bad actors."  [Doc. 43 at 3].  Defendant Bliss then points to numerous allegations throughout the Complaint where Plaintiff alleges that Mr. Bliss, and not Defendant Bliss, submitted and executed the loan documents.  [*Id.* at 4–5].  Defendant Bliss also argues that the general allegations regarding her actions constitute legal conclusions that the court should disregard.  [*Id*. at 6].  Those allegations include statements that she "knew of, benefited [from], consented [to], and ratified" the loans taken out by Mr. Bliss, [*id*. at 7]; *see also* [Doc. 25 at ¶¶ 13, 19–20, 22, 27, 29, 31–33, 36, 53, 60, 66, 70, 84; as well as allegations that Defendant Bliss is Mr. Bliss's "successor or assignee," [Doc. 43 at 8 (citing [Doc. 25 at ¶ 34])]; and that IOU "materially relied upon" the representations of Mr. Bliss

and Intercom in approving the loans, [*id*. (citing [Doc. 25 at ¶ 38])].  Defendant asserts

that it is "[o]nly through conclusory statements and speculation" that Plaintiff "attribute[s]

these actions upon Defendant Bliss by her alleged consent, benefit, or ratification."  [*Id*.].

     I find that the Amended Complaint fails to sufficiently state a claim for breach of

contract against Defendant Bliss.  In the Amended Complaint, IOU does not identify a

single contract to which Defendant Bliss was a party, nor does Plaintiff describe an offer

that was made to or by Defendant Bliss and accepted thereafter.  Rather, Plaintiff alleges

only that "Debtor executed a Guaranty of the [First] Note and Security Agreement," [Doc.

25 at ¶ 19], and "Debtor also executed a Guaranty of the Second Note as he did for the

First Loan," [*id*. at ¶ 34].  *See also* [*id*. at ¶ 3 (defining "Debtor" as "Kent Bliss")].  As to

Defendant Bliss, however, Plaintiff alleges that Defendant Bliss "knew of, benefited [from],

consented [to], and ratified" the loans executed by Mr. Bliss.  *See* [*id*. at ¶¶ 13, 19–20,

22, 27, 29, 31–33, 36, 53, 60, 66, 70, 84].  There are no factual allegations in the Amended

Complaint, however, regarding a written contract to which Defendant Bliss was a party

*with* IOU, and the only contracts referenced are between IOU and Mr. Bliss and/or

Intercom.  *See, e.g.*, [*id*. at ¶¶ 14, 19, 24, 31, 34].  Nor are there any non-conclusory

allegations that Defendant Bliss assumed any obligations under the First or Second Notes

personally.  *See generally* [*id*.].  The only allegation that comes close is IOU's allegation

that as to the Guaranty of the Second Note, Defendant Bliss is "Debtor's successor or

assignee."  [*Id*. at ¶ 34].  But apart from this conclusory statement, there are no <u>factual</u>

allegations, taken as true, that permit a factfinder to conclude that Defendant Bliss is

legally a successor or assignee of the Guaranty on the Second Note, *e.g.*, an allegation

that Defendant Bliss also executed the Guaranty on the Second Note.   Accordingly, because there are no factual allegations to support Plaintiff's breach of contract claim against Defendant Bliss, I respectfully **RECOMMEND** that Defendant Bliss's Motion to Dismiss as to Plaintiff's claim for Breach of Instruments and Related Relief as to Defendant Bliss (Claim Two) be **GRANTED**.

### C.  Quantum Meruit/Unjust Enrichment and Related Relief as to Defendant Bliss (Claim Three)

"Quantum meruit is an equitable theory of recovery that arises out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered."  *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 287 P.3d 842, 847 (Colo. 2012). To recover in quantum meruit, a plaintiff must show that (1) at her expense, (2) the defendant received a benefit, (3) "under circumstances that would make it unjust for the defendant to retain the benefit without paying."  *Id.*  "Quantum meruit allows a party to recover the reasonable value of the services provided when the parties either have no express contract or have abrogated it."  *Id.*   Additionally, Colorado precedent makes clear that quantum meruit is the same form of relief as a claim for unjust enrichment.  *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP,* 293 P.3d 55, 64 (Colo. App. 2011) (Terry, J., dissenting) ("In Colorado, quantum meruit is synonymous with the doctrines of quasi-contract and unjust enrichment.").  Indeed, the Colorado Supreme Court has stated that, "[a]pplication of the doctrine of quantum meruit, also termed quasi-contract or unjust enrichment, does not depend on the existence of a contract, either express of implied in fact."  *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000).

In the Motion to Dismiss, Defendant Bliss does not expressly address Plaintiff's quantum meruit/unjust enrichment claim, including whether Plaintiff sufficiently pleads the elements to state a claim under these theories. *See* [Doc. 43]. Instead, as indicated above, she requests generally that Plaintiff's claims be dismissed because the allegations do not sufficiently allege bad conduct by Defendant Bliss. *See* [Doc. 43 at 3–8]. To the extent Defendant Bliss intended to extend her general arguments to her request to dismiss Plaintiff's quantum meruit/unjust enrichment claim, I respectfully decline to recommend dismissal on that basis and find that Plaintiff has alleged sufficient facts at this juncture. In addition, with respect to motions brought pursuant to Rule 12(b)(6), Judge Arguello's Civil Practice Standards clearly require "[f]or each claim for relief that the movant seeks to have dismissed, the movant shall clearly enumerate each element that movant contends must be alleged, but was not." CMA Civ. Practice Standard 7.1D(d)(1). The failure by Defendant Bliss to comply with Judge Arguello's Civil Practice Standards is also an independent basis to deny Defendant Bliss's request to dismiss the claim. CMA Civ. Practice Standard 7.1A(e)(2) (providing, *inter alia*, "noncompliant motions, responses, replies, or objections may be denied in whole or part without prejudice.").

However, for the purposes of completeness, this court turns briefly to consider IOU's allegations. IOU alleges that it "provided the Loan Funds to [Defendant] Bliss through [Mr. Bliss], expecting their repayment, which they knew, benefitted, consented and ratified," [Doc. 25 at ¶ 66]; the "traceable proceeds of the sale of the Texas Property … are subject to the Second Loan," and such proceeds "were instead used by [Defendant]

Bliss" to purchase the Colorado Property, which she later sold to Defendant Austin after IOU recorded its *lis pendens* on the property, to "hinder, delay or defraud enforcement of the Loans" on the property, [*id*. at ¶¶ 37(d), 44]; and Defendant Bliss has been "unjustly enriched by the [Loan Funds] at IOU's expense and is indebted to IOU for them, interest and costs," [*id*. at ¶ 67]. Construing these factual allegations in favor of IOU, this court construes Plaintiff's theory as one where Defendant Bliss was not a third-party bystander to Mr. Bliss's actions, but rather had both knowledge and understanding that IOU was loaning money to Mr. Bliss and/or Intercom; that such money was not for the benefit of Intercom but rather was for her own personal benefit; and that she accepted the loan funds with that knowledge and understanding. Thus, given that quantum meruit and unjust enrichment are equitable claims that do not rely on the existence of an express contract, the court finds that Plaintiff has sufficiently alleged a claim under such theory. *See Dudding*, 11 P.3d at 444 ("Application of the doctrine of quantum meruit, also termed quasi-contract or unjust enrichment, does not depend on the existence of a contract, either express of implied in fact."). Accordingly, I respectfully **RECOMMEND** that Defendant Bliss's Motion to Dismiss as to Plaintiff's unjust enrichment/quantum claim (Claim Three) be **DENIED**.

### D. Conveyance to Defraud and Related Relief as to All Defendants ("Fraudulent Conveyance") (Claim Four)

Defendant Bliss argues that Plaintiff's fraudulent conveyance claim "fails to meet the particularized standard that is required when pleading a claim for fraud" under Federal Rule of Civil Procedure 9(b). *See* [Doc. 43 at 8–9]. Specifically, she asserts that the Amended Complaint "fail[s] to set forth the time, place, and contents of any specific false

statement or misrepresentation made by Defendant Bliss"; Plaintiff "fails to allege who, what, when, where, and how the sale of the property by Defendant Bliss to Defendant Austin was a fraudulent transfer"; and the allegations show that Plaintiff "does not know whether [IOU] was 'accidentally, fraudulently and/or otherwise omitted" from the title to the Colorado Property."  [Doc. 43 at 9–10].

This court is not persuaded by Defendant Bliss's objections premised on Rule 9(b) or her arguments.  *See Drywave Techs. USA, Inc. v. Message Int'l, Ltd.*, No. 16-cv-1775-MSK-NYW, 2018 WL 1522608, at *5 (D. Colo. Mar. 28, 2018).  In *Drywave*, one of the defendants brought a counterclaim for fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act ("CUFTA").  *Id.*  The *Drywave* court noted that "it is not clear that the heightened pleading requirements of [Rule 9(b)] are applicable to all fraudulent conveyance claims."  *Id.*  The court explained that "fraudulent conveyance claims are not the same as fraud claims" and that "there are two different flavors of fraudulent conveyance claims."  *Id.*  Relevant here, the first type of claim arises from "transfers of property [] made with an intent to hinder, delay and defraud creditors."  *Id.*; *see* [Doc. 25 at ¶ 73 ("The sale, purchase of and conveyances of the Colorado Property to Bliss and Austin were intended to hinder, delay or defraud IOU of its debt/secured interest in her property, assets and proceeds, resulting from the sale of the Texas Property, intended for this purpose.")].  The court went on to explain that "there is some disagreement among courts" regarding whether Rule 9(b) applies to this category of fraudulent conveyance claims.  *See Drywave*, 2018 WL 1522608, at *6 (explaining that some courts apply a strict standard of pleading while others "take a more lenient approach finding that the complaint

must simply allege sufficient facts upon which to conclude that money was transferred from a debtor to a defendant and the transfer violated" the CUFTA).  Ultimately, the court found "the reasoning of the decisions applying a more lenient standard to be persuasive" and determined that it was "sufficient that the transferor, transferee, amount and approximate time period [were] disclosed" in the complaint.  *Id*.

Here, unlike the parties in *Drywave*, IOU does not expressly bring its fraudulent conveyance claim under the CUFTA, Colo. Rev. Stat. § 38-8-101 *et seq*.  However, reviewing the allegations in the light most favorable to Plaintiff—and particularly given Plaintiff's allegation that Defendant Bliss was jointly obtaining and benefitting from the Second Loan, [Doc. 25 at ¶ 37(a)]; covertly sold and conveyed the Texas Property on November 2, 2018, [*id*. at ¶ 37(c)], shortly after the Second Loan; used the funds from the Texas Property to purchase the Colorado Property, [*id*. at ¶ 37(d)]; and then transferred the Colorado Property after the recording of a *lis pendens* on the Colorado Property and the filing of suit in Georgia "to hinder, delay or defraud IOU," [*id*. at ¶¶ 40–44]—I find the court's reasoning in *Drywave* applicable here.  *See Drywave*, 2018 WL 1522608, at *5 (explaining the first type of fraudulent transfer claim arises from "transfers of property based made with an intent to hinder, delay and defraud creditors").  Likewise, I find that the Amended Complaint sufficiently discloses Defendant Bliss as the transferor, Defendant Austin as the transferee, the Colorado Property "valued over $180,000" as the "amount" at issue, and November 2018 as the time of the transfer to state a fraudulent conveyance claim against Defendant Bliss.  *See* [Doc. 25 at ¶¶ 37, 44]; *see also Drywave*, 2018 WL 1522608, at *6.

Moreover, I would reach the same conclusion even if Rule 9(b) applied, as Defendant Bliss contends.  *See* [Doc. 43 at 8–9].  Federal Rule of Civil Procedure 9(b) requires a party to state with particularity the circumstances constituting fraud. "Malice, intent, knowledge, and other conditions of a person's mind," however, may be alleged generally.  *Id.*  The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claim and the factual background upon which they are based."  *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (citation, quotation marks, and brackets omitted).  Therefore, a plaintiff is required to provide the "who, what, when, where and how of the alleged claims." *Id.*

As mentioned above, Defendant Bliss argues that the allegations in the Amended Complaint "fail[] to allege who, what, when, where, and how the sale of the property by Defendant Bliss to Defendant Austin was a fraudulent transfer."  [Doc. 43 at 10].  The court respectfully disagrees.  As explained above, IOU provided factual allegations of the *who*, Defendants Bliss and Austin; *what*, Defendant Bliss's transfer of the Colorado Property to Defendant Austin; *when*, on November 12, 2020, after IOU recorded its *lis pendens* on the property; *where*, in El Paso County, "to hinder, defraud, and delay enforcement of Plaintiff's Georgia Case against the Colorado Property"; and *how*, through a statement of trust and deed filed by Defendant Austin.  *See* [Doc. 25 at ¶¶ 41–46]. Accordingly, the court finds the allegations sufficiently afford Defendant Bliss fair notice of IOU's claims and the factual background on which they are based.  *See LNV Corp. v. Hook*, No. 14-cv-00955-RM-CBS, 2015 WL 5679723, at *8 (D. Colo. Sept. 25, 2015) (applying Rule 9(b) and finding that the plaintiff's fraudulent conveyance claim was

sufficiently pled where the plaintiff "provided factual allegations" of the who, what, when, where, and how to place the defendant on fair notice of the "claims and factual background on which they are based").  Accordingly, I respectfully **RECOMMEND** that Defendant Bliss's Motion to Dismiss as to Plaintiff's fraudulent conveyance claim (Claim Four) be **DENIED**.

### E.    Plaintiff's Remaining Claims

Similar to Plaintiff's quantum meruit/unjust enrichment claim (Claim Three), Defendant Bliss also does not make any express arguments regarding the dismissal of Plaintiff's remaining claims for declaratory and equitable relief (Claim One); equitable lien/mortgage (Claim Five); constructive trust (Claim Six); or judicial foreclosure (Claim Seven).  As discussed above, failure to comply Judge Arguello's Civil Practice Standards may lead to denial in whole or part without prejudice.  CMA Civ. Practice Standard 7.1A(e)(2).  On this basis alone, this court declines to recommend dismissal of Plaintiff's claims.

Even if this court were to reach the substance of these claims, given this court's finding that Plaintiff sufficiently states claims for unjust enrichment/quantum meruit (Claim Three) and fraudulent conveyance (Claim Four), the court finds that Plaintiff's remaining claims survive dismissal at this juncture. *See Tan v. Det-CO, Inc.*, No. 17-cv-01678-NYW, 2018 WL 922133, at *16 (D. Colo. Feb. 15, 2018) ("The availability of a declaratory judgment under the Federal Declaratory Judgment Act … depends upon the existence of a judicially remediable right." (citation omitted)); *Am. Inv'rs Life Ins. Co. v. Green Shield Plan, Inc.*, 358 P.2d 473, 477 (Colo. 1960) ("Equitable liens arise by contract or conduct

of parties, or if there is a showing of unjust enrichment or that one has funds which in equity he should not be allowed to retain."); *Paoloni v. Goldstein,* 331 F. Supp 2d 1310, 1313 (D. Colo. 2004) ("Colorado law clearly recognizes that '[a] constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs.'" (citing *Lyons v. Jefferson Bank & Trust* 793 F. Supp. 981, 985 (D. Colo. 1992)); *Hook*, 2015 WL 5679723, at *8 (acknowledging "'judicial foreclosure' is a cognizable 'cause of action' under Colorado and federal law"). Accordingly, I respectfully **RECOMMEND** that Defendant Bliss's Motion to Dismiss be **DENIED** as to Plaintiff's claims for declaratory and equitable relief (Claim One); equitable lien/mortgage (Claim Five); constructive trust (Claim Six); and judicial foreclosure (Claim Seven).

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)   Defendant Bliss's Motion to Dismiss [Doc. 43] be **GRANTED IN PART AND DENIED IN PART**;

(2)   Plaintiff's breach of instruments claim (Claim Two) be **DISMISSED without prejudice**; and

(3)   Defendant Bliss be required to respond to the cross-claim [Doc. 35] brought by Defendant Beverly Ann Austin within seven (7) days of any Order by the Honorable Christine M. Arguello dismissing less than all of the claims of the Amended Complaint [6]

---

[6] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for

DATED:  January 13, 2022                    BY THE COURT:

                                            _____
                                            Nina Y. Wang
                                            United States Magistrate Judge

---

*de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).